THERIET & BARON v. EDGAR E. VOORHIES.

When the husband mortgaged the separate property of his wife to secure a debt due by himself, and the wife appeared in the act and made a formal renunciation of all her rights, it was held that the act was not binding on the wife.

APPEAL from the District Court of the parish of Lafayette, *Dupré, J.*
*E. Simon, sen. & L. J. Gary*, for plaintiffs and appellants. *Deblanc & Fusilier* and *C. H. Mouton*, for appellee.

SPOFFORD, J. *Euzeïde Martin*, wife of *Edgar E. Voorhies*, received from her mother and natural tutrix the slaves *Portalis* and *Bruno* as a part of her paraphernal estate.

Afterwards, her husband, *Voorhies*, being indebted personally to the plaintiffs, *Theriet & Baron*, in the sum of $800 76, gave his notes for the amount, to secure which he executed an authentic act of mortgage in their favor upon the slaves aforesaid. His wife, *Euzeïde Martin*, appeared in the act and declared " *qu'elle veut et entend consentir à cette hypothèque, et renoncer à tous droits d'hypothèque légale et autre, qu'elle a ou peut avoir sur les esclaves Portalis et Bruno, objet du dit contrat.*" The notary detailed in the act the several mortgage rights which she renounced, and explained the same to her out of the presence of her husband, pursuant to the Act of March 27th, 1835, (p. 153), the second section of which has been reënacted in 1855 and may be found in the Revised Statutes, p. 561, sec. 5.

After the maturity of the notes given by *Voorhies*, the plaintiffs procured an order of seizure and sale against the slaves thus mortgaged. *Mrs. Voorhies* enjoined the seizure and sale upon the ground, that the slaves being her paraphernal property, had not been legally mortgaged and could not be sold for the separate debt of her husband. The District Judge maintained the injunction, and the plaintiffs in the order of seizure and sale have appealed.

It is conceded that the slaves were the separate property of the wife; but the appellants contend that, under the Act of 1835, she could validly renounce her title to them, and that she did so; they further contend that, by suffering them to be mortgaged for her husband's debt, she did not contravene the provision of Article 2412 of the Code, because she did not bind *herself* for her husband's debt, but only *her property*.

The Act of March 27th, 1835, refers not to transfers or mortgages of the wife's own property, but provides for a renunciation of the hypothecary rights of the wife upon the property of the husband. These she is empowered to renounce by pursuing the formalities prescribed in that statute. But that law gave her no greater or other powers than she had before with respect to the alienation or encumbrance of her own lands and slaves.

It does not clearly appear in this case that the wife renounced or intended to renounce her own absolute title to her paraphernal slaves; but if the act may be thus construed, still the question recurs, was it a lawful act? Can a wife legally hypothecate her separate property to secure an individual debt of her husband? When properly authorized, and for proper purposes, she may sell her paraphernal estate, and that is all that appears to be implied in the

opinion of the court in *Delacroix* v. *Nolan*, 7 An., 682, cited on behalf of the appellant.

But it was expressly held in *Curry* v. *Brown*, 12 Rob., 82, that a contract by which the wife binds her property as a security for her husband's debt is as much within the prohibition of Art. 2412, as a contract by which she binds herself personally. Indeed, all useful protection for married women would be gone if the refined distinction contended for by the appellants' counsel were to be adopted by the court, and it were to be held that the wife may devote all her property without restraint to the use of her husband, so long as she does not sign a personal obligation for his debts. It is the uniform practice of this court to look through all the disguises in which men may shroud their business dealings, and to prevent, so far as possible, the property of the wife from being sacrificed for the debts of her husband, from which she derives no benefit. *Pascal* v. *Sauvinet*, 1 An. 428; *Erwin* v. *McCalop*, 5 An., 173; *Provost* v. *Provost*, 5 An., 572. It was held in *McIntosh* v. *Smith*, 2 An., 756, that a wife who had stood by and seen her property sold to pay her husband's debts, was not estopped from bringing an action to reclaim it. The legal presumption of marital influence relieves a married woman, in some cases, from what might otherwise be a just imputation of fraud.

Judgment affirmed.

VOORHIES, J., recused himself in this case, on account of relationship to one of the parties.